Beatriz Sosa-Morris (Texas State Bar No. 24076154)
bsosamorris@smnlawfirm.com
John Neuman (Texas State Bar No. 24083560)
SOSA-MORRIS NEUMAN ATTORNEYS AT LAW
5612 Chaucer Dr.
Houston, TX 77005
Telephone: (281) 885-8844
Facsimile: (281) 885-8813
LEAD ATTORNEY IN CHARGE FOR
PLAINTIFF AND CLASS MEMBERS

W. Gary Fowler (Texas State Bar No. 07329250)
gfowler@jw.com
Scott M. McElhaney (Texas State Bar No. 00784555)
smcelhaney@jw.com
David R. Schlottman (Texas State Bar No. 24083807)
dschlottman@jw.com
JACKSON WALKER LLP
2323 Ross Ave., Suite 600
Dallas, Texas 75201
Telephone: 214-953-6000
Facsimile: 214-953-5822
ATTORNEYS FOR DEFENDANTS

Laurent R.G. Badoux (Arizona State Bar No. 020753)
LBadoux@Buchalter.com
Steven R. Schneider (Arizona State Bar No. 030958)
SSchneider@Buchalter.com
BUCHALTER
16435 N. Scottsdale Rd., Suite 440
Scottsdale, Arizona 85254
Telephone: (480) 383-1800
Facsimile: (480) 824-9400
ATTORNEYS FOR DEFENDANTS

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Timothy Bell, on behalf of himself and on behalf of all other similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>Topgolf USA Riverwalk, LLC; Topgolf USA Gilbert, LLC; and Topgolf International, Inc.,<br><br>Defendants. | Case No. 2:17-cv-01110-PHX-SPL<br><br>**JOINT MOTION TO APPROVE SETTLEMENT OF CLAIMS UNDER THE FAIR LABOR STANDARDS ACT AND TO ENTER AGREED FINAL JUDGMENT** |

Plaintiff Timothy Bell, on behalf of himself and the other opt-in plaintiffs listed on Exhibit A to the attached Settlement Agreement and its Addendum ("the Opt-in Plaintiffs"), and Defendants Topgolf USA Riverwalk, LLC; Topgolf USA Gilbert, LLC; and Topgolf International, Inc. (collectively "Topgolf"), present this Joint Motion to Approve Settlement of Claims Under the Fair Labor Standards Act ("FLSA") and to Enter Agreed Final Judgment and would respectfully show the Court as follows:

**I.     Background and Introduction.**

Bell contends in this case that Topgolf failed to pay him wages that he was owed under the FLSA and Arizona law. The gravamen of the live Complaint is that Topgolf paid Bell direct cash wages at a rate below the federal and Arizona minimum wage rates, and was not entitled to rely on the "tip credit" provisions of federal or state law. Bell alleges Topgolf could not rely on the tip credit because (a) Topgolf made him share his tips with employees who did not customarily and regularly receive tips and were thus ineligible to share in his tips and (b) Topgolf failed to inform him of its reliance on the tip credit as the law requires.

Bell brought this suit as a "collective action" pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), which allows an employee to bring an FLSA claim on behalf of himself and other employees similarly situated. The Act requires those who wish to join such an action to file with the Court a "consent in writing" to become "a party plaintiff." 29 U.S.C. § 216(b).

Here, Bell has filed a Motion for Conditional Certification of an FLSA collective, *see* Doc.# 64, but that motion has not yet been determined. The status of that Motion, however, is of no consequence here because the "*sole consequence* of conditional certification [in an FLSA collective action] is the sending of court-approved written notice to employees . . . who in turn become parties to a collective action only by filing written consent with the court." *Genesis Healthcare Corp. v. Symczyk*, 569 U.S. 66, 75 (2013) (emphasis added).

Since the filing of the original complaint, about 40 current or former employees of Topgolf (not including Bell) have filed opt-in consent forms to join this case. Both the plain language of Section 16(b) and case law show that each of these Opt-in Plaintiffs is a party plaintiff in this action. Section 16(b) states that, when a person files the required "consent in writing," he or she becomes "a party plaintiff." 29 U.S.C. § 216(b). The Ninth Circuit has similarly held that "every plaintiff who opts in to a collective action has party status." *Campbell v. City of Los Angeles,* 903 F.3d 1090, 1101 (9th Cir. 2018) (citation omitted); *see Mickles v. Country Club, Inc.*, 887 F.3d 1270, 1278 (11th Cir. 2018) (holding that "those who opt in become party plaintiffs upon the filing of a consent" and "nothing further, including conditional certification, is required.").

The names of the Opt-in Plaintiffs are listed on Exhibit A to the settlement agreement and its addendum, and on the proposed order approving the settlement agreement and the proposed agreed final judgment.

Bell also raises Arizona state law claims, and he included in his pleading allegations that those claims are maintainable as class claims under Federal Rule of Civil Procedure 23. However, Bell has not filed a motion for class certification under Rule 23, and certification of a class is not sought for the purposes of settlement and dismissal of this case. Because there is no "certified class," the provisions of Rule 23(e) relating to judicial approval of the settlement of class claims do not apply. *See* Advisory Committee Notes to the 2003 Amendments to Rule 23 (noting that judicial approval is required "only if the claims, issues, or defenses of a *certified class* are resolved by settlement, voluntary dismissal, or compromise.") (emphasis added).

The only claims pending in this case are thus the individual FLSA and state law claims of Bell and the Opt-in Plaintiffs, and the Opt-in Plaintiffs designated Bell to be their agent to file and prosecute their respective claims for unpaid wages, to make decisions on their behalf concerning such claims, and to negotiate a resolution of such claims on their behalf. *See*, *e.g.*, Doc.# 8-1 (opt-in consent form for Aaron Cicero).

The parties initially conducted a settlement conference in April of 2018 as required by the Court. *See* Joint Report on Settlement Talks (Doc.# 76) (noting that the parties met for over two hours, exchanged information, and discussed their relevant positions). More recently, over the past several weeks, counsel for Bell and the Opt-in Plaintiffs and counsel for Topgolf conferred and further explored settlement extensively. In the course of discovery in the case, the parties exchanged significant amounts of information relevant to the merits of Bell's and the Opt-in Plaintiffs' claims and alleged damages. These documents included timesheet data for all relevant Topgolf employees, scheduling data relating to dates of employment and assigned work stations for employees at the relevant Topgolf venues, payroll data for all relevant Topgolf employees, and data regarding tips for relevant Topgolf employees. Counsel for Bell and the Opt-in Plaintiffs undertook an in-depth factual investigation of these matters before entering into the settlement agreement.

Over the course of their settlement discussions, the parties exchanged multiple offers and counter offers in arm's-length negotiations of a settlement agreement. The parties reached a settlement and submit that it represents a fair and reasonable resolution of the case's claims, as Bell and the Opt-in Plaintiffs will receive significant financial compensation and avoid the risks and delay inherent in the continued prosecution of this case. The parties now jointly seek the Court's approval of their settlement agreement.

**II.   Redactions and Request to File Unredacted Versions Under Seal.**

One of the terms of the settlement agreement between the parties concerns confidentiality and not further discussing this suit. To effectuate that provision of the settlement agreement, references to the relevant dollar amounts to be paid under to the settlement have been redacted from the publicly-filed version of this Joint Motion and its exhibits. Pursuant to Local Civil Rule 5.6, an unredacted version of this Joint Motion and its exhibits has been lodged with the Court, along with a Joint Motion to allow the sealing

of the unredacted versions, with the required statement of the facts and legal authority justifying the filing of the unredacted documents under seal.

### III. Argument and Authority.

In order to prevent private agreements between employers and employees that have the effect undermining the requirements of the law, the FLSA has been interpreted to require the settlement of claims under the Act to be approved by either the Department of Labor or a court of competent jurisdiction. *See* 29 U.S.C. § 216(b); *Brooklyn Sav. Bank v. O'Neil*, 324 U.S. 697, 706 (1945); *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982). This Court has thus recently explained that, in an FLSA case, "the parties *must* seek the district court's approval of the settlement's terms to ensure that it is enforceable and fair." *Simko v. World Class Car Wash LLC*, No. V-17-03870-PHX-DJH, 2018 U.S. Dist. LEXIS 205096, *3 (D. Ariz. Nov. 30, 2018) (emphasis in original). However, there is no settlement approval requirement under any of the state law claims detailed in Plaintiff's complaint.

When reviewing a proposed settlement of FLSA claims, a court must review the settlement and decide whether it is a "'fair and reasonable resolution of a bona fide dispute' given the 'totality of the circumstances' within the context of the purposes of the FLSA." *Id.* at *4 (quoting *Lynn's Food Stores, Inc.*, 679 F.2d at 1355).

As set out with more specificity below, there is a bona fide dispute under the FLSA, and the proposed settlement of this case is fair and reasonable, because there are complex factual and legal issues present in the case and because, in the absence of a settlement, further lengthy proceedings would ensue, and there is a substantial risk that Bell and the Opt-in Plaintiffs would recover less or nothing from Topgolf.

### A. Bona Fide Dispute.

"The Court must first determine whether a bona fide dispute exists. A bona fide dispute exists when there are legitimate questions about 'the existence and extent of Defendant's FLSA liability.'" *Simko*, at *4 (citation omitted).

Here there is a bona fide dispute under the FLSA. As illustrated by Topgolf's pending Motion to Dismiss Plaintiff's First Amended Complaint (Doc.# 69), the parties dispute Bell's underlying theory that Topgolf was not entitled to rely on the tip credit provisions of the FLSA (both because Topgolf allegedly wrongfully required Bell to share part of his tips with employees who were ineligible to share in tips, and because Topgolf allegedly did not inform Bell about the provisions of the FLSA as the law requires). Additionally, the parties dispute the amount of damages that any claimant would or could recover, even if there was a violation of the provisions of the FLSA, because the parties disagree about the extent or scope of any violation that may have occurred, and thus the amount of any damages that might be due. Under the FLSA, a defendant employer is only liable for damages for the two-year period before a lawsuit is filed or before an employee files a written consent to join unless a willful violation is show by the employee. *See* 29 U.S.C. § 255(a). Similarly, the FLSA's default measure of damages is the amount of unpaid minimum wages or overtime with an equal amount as liquidated damages. *See* 29 U.S.C. § 216(b). However, should an employer demonstrate that its efforts to comply with the FLSA were in good faith, it can avoid liquidated damages entirely and only be liable for any unpaid wages. *See* 29 U.S.C. § 260. Here, the parties disputed both willfulness and good faith. Had Defendants ultimately prevailed on either issue, the measure of damages available to the Plaintiffs would have been severally reduced.

### B. Reasonableness of the Settlement.

The settlement of this case was based on a compromise of the issues presented in the case. As noted above, the parties exchanged documents relevant to determining whether there could be liability under the FLSA and the amount of any damages incurred if there was an FLSA violation.

Based on the information exchanged, Bell and the Opt-in Plaintiffs, and Topgolf, each created their own damages models for each individual claimant, assuming that the claimants were successful in obtaining a finding of liability. The models took into account

the number of weeks each claimant actively worked for Topgolf, the number of hours that each individual claimant worked in a tipped position, and the tip credit taken. The parties used their respective damages models as their benchmarks for their negotiations. The settlement reached represented a reasonable compromise between the result most favorable to Bell and the Opt-in Plaintiffs and the result most favorable to Topgolf. Bell and the Opt-in Plaintiffs acknowledge that, under other foreseeable results from the full litigation of this matter, they stood to recover less than the settlement reached. The parties agree that the ultimate compromise took into account the parties' relevant positions, strengths, and weaknesses. Given the relief achieved by Bell and the Opt-in Plaintiffs, the parties submit that the settlement reached is both fair and reasonable.

Indeed, the gross amount to be paid to the individual claimants—approximately $██████—represents a figure higher than the parties' calculation of the total amount of unpaid minimum wages plus and additional equal amount as liquidated damages should the Plaintiffs prevail. (The higher amount agreed to represents a compromise including the state law claims in the case, which could have entitled the claimants to relief above what the FLSA could provide as well as compromise on attorney's fees.) The average settlement amount to be received by each individual in this lawsuit, after deducting costs and fees and costs, is over ██████

The total amount to be allocated to Bell and the Opt-in Plaintiffs as individual payments for compromised damages falls well within the range of reasonableness in light of the amounts at stake and the risks of potential further litigation and delay. After almost two-years of hard-fought litigation, including document discovery and motion practice (including briefing on two motions to dismiss and two motions for condition certification), this settlement was reached through arms-length negotiations. It is the product of thorough factual and legal analysis and reflects Topgolf's potential liability. Counsel for Bell and the Opt-in Plaintiffs and counsel for Topgolf have each handled numerous FLSA individual and collective actions lawsuits. In the view of the parties' experienced counsel, this

settlement is a fair and reasonable result for Bell and the Opt-in Plaintiffs, weighing the benefits of immediate monetary relief and the strength of their claims against the uncertainty of further litigation and Topgolf's defenses. Indeed, an additional reason that the settlement is fair and reasonable is that Bell's and the Opt-in Plaintiffs' fundamental claim—i.e., that Topgolf's alleged assignment of employees who otherwise worked as bussers to a particular work station made them ineligible to participate in tip pools—involves not only disputed facts, but also highly complex, and unresolved, legal issues under the FLSA, as shown in connection with the briefing on Topgolf's Motion to Dismiss Plaintiff's First Amended Complaint (Doc.# 69).

### C. The Reasonableness of the Attorneys' Fees and Costs.

The additional amounts of monetary consideration to be paid by Topgolf under the settlement agreement are also fair and reasonable.

The agreement allocates approximately $[redacted] for attorney's fees and $[redacted] in costs. The agreement provides that Plaintiff's counsel will recover their fees from the total settlement fund. As various courts have noted, the theory behind attorney's fees awards in class and collective actions is that "a financial incentive is necessary to entice capable attorneys, who otherwise could be paid by hourly-rate clients, to devote their time to complex, time-consuming cases for which they may never be paid." *Mashburn v. Natl. Healthcare, Inc.*, 684 F. Supp. 679, 687 (M.D. Ala. 1988) (cited, with approval, in *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)).

The use of the percentage-of-fund method to calculate reasonable attorney's fees is well-established in the Ninth Circuit. *See*, *e.g.*, *Six (6) Mexican Workers v. Arizona Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990); *In re Bluetooth Headset Products Liab. Litig.*, 654 F.3d 935, 942 (9th Cir. 2011) ("Because the benefit to the class is easily quantified in common-fund settlements, we have allowed courts to award attorneys a percentage of the common fund in lieu of the often more time-consuming task of calculating the lodestar."); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1123

(C.D. Cal. 2008) ("[I]t is well settled in the Ninth Circuit that a court has discretion to award either a percentage of the class fund or a lodestar award in a class fund attorney's fee; [however,] the primary basis of the fee award remains the percentage method.").

The parties submit that the fee requested from the total settlement amount is reasonable in this case. This Court should approve the requested here. The Plaintiff and the Opt-in Plaintiffs are all receiving amounts, after deduction of fees and costs, that exceed what the parties calculate as 200% of their unpaid minimum wages under the FLSA.

### D. The Reasonableness of the Service Awards.

Finally, the settlement agreement allocates $■■■■ for Bell, and $■■■■ each to Opt-in Plaintiffs Chelsea Cuzela and Victor Wilson as service awards. "Service awards, also known as incentive awards, are distributed at the court's discretion. Service awards are payments to class representatives for their service to the class in bringing the lawsuit. Such awards are 'fairly typical' and 'intended to compensate class representatives for work done on behalf of the class, [and] to make up for financial or reputational risk undertaken in bringing the action . . . .'" *Id.* at *6 (citations omitted).

Here, Bell, Cuzela and Wilson attended the April 2018 settlement conference, and they have been involved in providing their time and effort to assisting the other Opt-in Plaintiffs and counsel in the prosecution of this suit, such as by meeting with counsel to provide background information about their employment and Topgolf's practices to substantiate claimants' claims. Also, under the terms of the settlement agreement, Bell, Cuzela and Wilson agree to use their best efforts to ensure that each Opt-in Plaintiff executes the release and delivers all required material necessary to ensure payment of the individual settlement amounts to the Opt-in Plaintiff.

Under these circumstances, the parties ask that the service awards be approved.

### C. The Remaining Terms.

The remaining terms of the proposed settlement are also fair and reasonable. The settlement agreement gives Topgolf appropriate releases. The release given by the Opt-in

Plaintiffs is appropriately limited to claims against Topgolf relating to services performed for Topgolf prior to the execution of the release, but does not include any unemployment claim, workers' compensation claim, or any other claim not related to wages for work performed filed as of the date of their agreement. Because of the additional monetary consideration being paid, the release given by Bell, Cuzela and Wilson, however, is broader and encompasses for all claims arising out of or relating to their employment with Topgolf which have arisen, in whole or in part, prior to their respective execution of the settlement agreement.

**IV. Conclusion.**

The settlement reached by the parties is a fair and reasonable compromise of the respective positions of Bell, the Opt-in Plaintiffs and Topgolf. The parties therefore respectfully request that the Court approve the settlement agreement and enter the Agreed Order and Agreed Final Judgment tendered to the Court with this Joint Motion.

DATED this 8th day of February, 2019.

**SOSA-MORRIS NEUMAN**
**ATTORNEYS AT LAW**

By: */s/ Beatriz Sosa-Morris (with permission)*
  Beatriz Sosa-Morris (admitted Pro Hac Vice)
  BSosaMorris@smnlawfirm.com
  Texas State Bar No. 24076154
  John Neuman (admitted Pro Hac Vice)
  JNeuman@smnlawfirm.com
  Texas State Bar No. 24083560
  SOSA-MORRIS NEUMAN
  ATTORNEYS AT LAW
  5612 Chaucer Drive
  Houston, Texas 77005
  Telephone: (281) 885-8844
  Facsimile: (281) 885-8813

  *Lead Attorney in Charge for*
  *Plaintiff and Class Members*


**JACKSON WALKER LLP**

By: */s/ Scott M. McElhaney*
  W. Gary Fowler
  Texas State Bar No. 07329250
  Scott M. McElhaney
  Texas State Bar No. 00784555
  David R. Schlottman
  Texas State Bar No. 24083807
  2323 Ross Ave., Suite 600
  Dallas, Texas 75201
  Tel: 214-953-6000
  Fax: 214-953-5822
  Email: gfowler@jw.com
  Email: smcelhaney@jw.com
  Email: dschlottman@jw.com

  *Attorneys for Defendants*

**BUCHALTER,
A PROFESSIONAL CORPORATION**

By: */s/ Laurent R.G. Badoux*
Laurent R.G. Badoux
Arizona State Bar No. 020753
Steven R. Schneider
Arizona State Bar No. 030958
BUCHALTER
16435 N. Scottsdale Rd., Suite 440
Scottsdale, Arizona 85254
Tel: (480) 383-1800
Fax: (480) 824-9400
Email: lbadoux@buchalter.com
Email: sschneider@buchalter.com

*Attorneys for Defendants*

I hereby certify that I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants, and mailed a copy of same to the following if non-registrants, this 8th day of February, 2019, to:

Beatriz Sosa-Morris
John Neuman
Sosa-Morris Neuman, Attorneys at Law
5612 Chaucer Drive
Houston, TX  77005
bsosamorris@smnlawfirm.com
jneuman@smnlawfirm.com
*Attorneys for Plaintiff*

David R Schlottman
Scott M. McElhaney
William Gary Fowler
Jackson Walker LLP
2323 Ross Ave., Ste. 600
Dallas, TX 75201
dschlottman@jw.com
smcelhaney@jw.com
gfowler@jw.com
*Attorneys for Defendants*

1  Laurent R.G. Badoux
2  Steven R. Schneider
   Buchalter
3  16435 N. Scottsdale Road, Suite 440
   Scottsdale, AZ  85254
4  lbadoux@buchalter.com
   sschneider@buchalter.com
5  *Attorneys for Defendants*

6

7  By: */s/  Scott M. McElhaney*


18478761v.4